```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
PETER V. SPAGNUOLO,

                    Plaintiff,              MEMORANDUM & ORDER
                                             12-CV-4327(JS)(ETB)
         -against-

SUFFOLK COUNTY, SUFFOLK COUNTY
POLICE DEPARTMENT, FORMER POLICE
COMMISSIONER RICHARD DORMER,
DETECTIVE MARLENE TULLY, DETECTIVE
DENNIS MURPHY, COMMANDING OFFICER
JAMES RHOADES, JOHN DOE'S NUMBERS
1-5 THOSE OFFICERS BEING OFFICERS
WHO ASSISTED IN THE ARREST,
INVESTIGATION AND/OR PROSECUTION
OF PLAINTIFF, SUFFOLK COUNTY
DISTRICT ATTORNEY'S OFFICE,
DISTRICT ATTORNEY THOMAS J. SPOTA,
ASSISTANT DISTRICT ATTORNEY
LAWRENCE OPISSO, SUFFOLK COUNTY
SHERIFF'S DEPARTMENT, SHARON
HUBBARD, and COREY BONAVIA,

                    Defendants.
----------------------------------------X
APPEARANCES
For Plaintiff:      Peter V. Spagnuolo, pro se
                    120 E. Main Street
                    Mount Kisco, NY 10549

For Defendant       Joseph DeDonato, Esq.
Hubbard:            Morgan Melhuish Arvidson Abrutyn & Lisowski
                    39 Broadway, 35th Floor
                    New York, NY 10006

For Defendants      Jason Bassett, Esq.
Suffolk County,     Susan A. Flynn, Esq.[1]
Dormer, Tully,      Office of the County Attorney
Murphy, Rhoades:    H. Lee Dennison Building
                    100 Veterans Memorial Highway
```

---

[1] The docket lists Ms. Flynn's appearance for Suffolk County only.

1

P.O. Box 6100<br>Hauppauge, NY 11788

SEYBERT, District Judge:

Currently pending before the Court is Defendant Sharon Hubbard's ("Hubbard") Motion to Dismiss (Docket Entry #24). For the foregoing reasons, Hubbard's motion is GRANTED IN PART and DENIED IN PART.

BACKGROUND[2]

Pro se Plaintiff Peter V. Spagnuolo ("Plaintiff"), an attorney admitted to practice law in the State of New York, commenced this action on August 28, 2012 against Defendants Suffolk County, Suffolk County Police Department, former Police Commissioner Richard Dormer, Detective Marlene Tully, Detective Dennis Murphy, Commanding Officer James Rhoades, John Does numbers 1-5, the Suffolk County District Attorney's Office, District Attorney Thomas J. Spota, Assistant District Attorney Lawrence Opisso, the Suffolk County Sheriff's Department, Sharon Hubbard, and Corey Bonavia (collectively "Defendants"). (See Compl. ¶ 20.)

Although Plaintiff brought this case against various Defendants, the Court will discuss only those facts relevant to the pending motion. Specifically, in April 2011, Plaintiff

---

[2] The following facts are taken from Plaintiff's Complaint and are presumed to be true for the purposes of this Memorandum and Order.

decided to propose to his girlfriend, Tamara Peterson, and began searching for an engagement ring. (Compl. ¶ 23.) As part of this search, Plaintiff checked craigslist.com, where he saw a listing from Defendant Hubbard advertising an engagement ring for sale. (Compl. ¶¶ 24-25.) Plaintiff contacted Hubbard via email about the ring, but ultimately decided that the requested price was too high and that he was not interested in purchasing the ring from Hubbard. (Compl. ¶¶ 25, 28.)

On May 11, 2011, an individual who had identified himself as "Pete" came to Hubbard's home to view the ring. (Compl. ¶¶ 76-77, 81.) This individual arrived at Hubbard's residence driving a light-colored sedan and smoking a cigarette. (Compl. ¶ 82.) Two witnesses, John Kupres and Corey Bonavia, described the gentleman as "six feet tall" and "over six feet tall." (Compl. ¶ 31.) The gentleman entered Hubbard's home and suddenly drew a gun, or what appeared to be a gun, and fled with the ring. (Compl. ¶ 84.)

Subsequently, Hubbard met with Detective Marlene Tully ("Tully") and identified Plaintiff from a photo lineup, although Plaintiff is 5'8" or less and did not fit the description of "six feet tall" or more. (Compl. ¶¶ 32, 34.) Plaintiff alleges that Tully erroneously allowed Hubbard to see his picture prior to the photo array or that Tully otherwise pointed Plaintiff out and that she did not use the proper procedures in presenting

3

Hubbard with the photo array. (Compl. ¶¶ 35-36.) Also during that meeting with police, Hubbard stated that the robber drove a gray sedan. (Compl. ¶ 40.) After police learned that Plaintiff had owned a gray Panoz, described as "an oddly shaped sports car" (Compl. ¶ 41), Hubbard "swore that night that the robber was driving an 'odd shaped gray car'" (Compl. ¶ 44).

On May 31, 2011, police arrested Plaintiff. (Compl. ¶¶ 55-57.) Plaintiff was arraigned the next morning and ultimately appeared before a Grand Jury. (Compl. ¶¶ 117, 125.) Hubbard testified before the Grand Jury and, according to Plaintiff, "provided false and incomplete testimony." (Compl. ¶ 128.) Thereafter, however, "the identity of the real perpetrator, Christopher Wolkoff, was established through a subpoena to craigslist." (Compl. ¶ 139.) Mr. Wolkoff confessed to the crime and the criminal case against Plaintiff was dismissed. (Compl. ¶¶ 66-67.)

Plaintiff now brings suit against various defendants for constitutional violations pursuant to 42 U.S.C. § 1983 and for additional state law violations. The Court reads the Complaint to assert the following claims, and only the following claims, against Hubbard: (1) a claim pursuant to 42 U.S.C. § 1983 ("Section 1983") that Hubbard conspired with others to, <u>inter alia</u>, offer false statements and testimony against Plaintiff (Compl. ¶ 181 (Fourth Cause of Action)); (2)

4

intentional infliction of emotional distress (Compl. ¶ 198 (Sixth Cause of Action)); (3) negligent infliction of emotional distress (Compl. ¶ 203 (Seventh Cause of Action)); and (4) slander (Compl. ¶¶ 217-20 (Eleventh Cause of Action)).

## DISCUSSION

Hubbard now moves to dismiss Plaintiff's slander and Section 1983 claims against her.  Hubbard argues that Plaintiff's slander claims are time-barred and privileged and that any claims pursuant to Section 1983 must be dismissed because Hubbard is not a state actor.  The Court will first address the applicable standard of review on a motion to dismiss before turning to Plaintiff's slander claims against Hubbard and Plaintiff's Section 1983 claims against Hubbard, in that order.

I. Standard of Review under Rule 12(b)(6)

In deciding Rule 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); accord Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009).  First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678; accord Harris, 572 F.3d at 72.  Second, only complaints that

5

state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

Furthermore, although Plaintiff appears in this action pro se, Plaintiff is an attorney duly admitted to practice in the State of New York. (Compl. ¶ 20.) Accordingly, Plaintiff is not entitled to the same leniency normally afforded pro se parties. See Chira v. Columbia Univ. in N.Y.C., 289 F. Supp. 2d 477, 482 (S.D.N.Y. 2003) ("Although Chira proceeds pro se here, he is an experienced attorney and accordingly the Court is not obligated to read his pleadings liberally.").

II. Slander Claims

The Complaint makes the following allegations regarding slanderous statements by Hubbard:

> 217. Defendant Hubbard falsely stated that Plaintiff robbed her to the responding Police Officers, Detectives and others and made other false statements regarding Plaintiff, the case and the circumstances surrounding the case.
> 218. Defendant Hubbard also stated to private investigators that Plaintiff had hired [sic] words to the effect that Plaintiff robbed her. This was at a time when Defendant Hubbard knew that another person had confessed to the crime and that Plaintiff was not the perpetrator.
> 219. Defendant Hubbard, in the presence of the private investigators, called 911 and

6

> informed them that the person who robbed her had sent two gentleman [sic] over to her house. This not only shows Defendant Hubbard's indifference to her initial accusation but shows her indifference to the truth and her readiness to lie to a 911 operator in order to obtain the response that she desires.

(Compl. ¶¶ 217-19.)

Hubbard maintains, as an initial matter, that Plaintiff's claims are time-barred under the one-year statute of limitations for slander. See N.Y. C.P.L.R. 215(3). According to Hubbard, the alleged slanderous statements were made prior to Plaintiff's indictment on June 3, 2011, but Plaintiff did not commence this suit until August 28, 2012. (Hubbard Br., Docket Entry 24-5, at 5.) Plaintiff concedes that his allegations contained in paragraph 217 regarding Hubbard's statements to the police and detectives were made prior to June 3, 2011. Accordingly, such claim is DISMISSED WITH PREJUDICE[3].

---

[3] Furthermore, to the extent that the Plaintiff attempts to raise any other claims of slander against Plaintiff for statements she made during the police investigation or grand jury hearing, such statements are privileged. See Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 409-10 (2d Cir. 2000) ("[G]ood faith communications of a party having an interest in the subject, or a moral or societal duty to speak, are protected by a qualified privilege if made to a party having a corresponding interest or duty." (internal quotation marks and citation omitted)). Hubbards' statements essentially reporting a crime create a rebuttable presumption of good faith. Id. at 410 (noting that reporting a crime "easily falls within the scope of the privilege" and that, therefore, a rebuttable presumption arises). "To overcome the qualified privilege defense, the plaintiff must show both that the allegedly defamatory

7

With respect to the remaining alleged slanderous statements, only those statements made within the one-year statute of limitations are actionable. See Carlson v. Geneva City Sch. Dist., 679 F. Supp. 2d 355, 371 (W.D.N.Y. 2010). Even if timely, however, Hubbard argues that any purportedly slanderous statements she made to private investigators were consented to by Plaintiff. The Court agrees.

Here, the Complaint provides only a vague discussion of the statements Plaintiff alleged Hubbard made to private investigators and to a 9-1-1 operator. In his opposition brief, Plaintiff maintains that he hired a private investigator in or around December 2011, after the charges against him had been dismissed. (Pl. Opp. Br., Docket Entry 42, at 6-7[4].) When the private investigator and his friend questioned Hubbard, Hubbard maintained that Plaintiff had robbed her. (Pl. Opp. Br. at 6-7.) Hubbard also called 9-1-1 and told the operator "that there

---

statements were false and that the defendants abused their qualified privilege." Brattis v. Rainbow Adver. Holdings, L.L.C., No. 99-CV-10144, 2000 WL 702921, at *5 (S.D.N.Y. May 31, 2000).

Here, however, Plaintiff offers only conclusory allegations that Hubbard's statements abused the privilege. See id. at *6 (plaintiff must allege facts sufficient to show that statements are consistent with malice); see also D'Lima v. Cuba Mem'l Hosp., Inc., 833 F. Supp. 2d 383, 391 (W.D.N.Y. 2011) (dismissing slander claims where plaintiff did not allege malice).

[4] The page numbers cited for Plaintiff's opposition brief refer to those provided by the Electronic Case Filing system.

were two individuals at her premises that were sent there by the person who robbed her." (Pl. Opp. Br. at 7.)

"Under New York law, a cause of action for slander contains four elements: (1) an oral defamatory statement of fact, (2) regarding the plaintiff, (3) published to a third party by the defendant, and (4) injury to the plaintiff." Boyd, 208 F.3d at 409 (internal quotation marks and citation omitted). Here, because the alleged slanderous statements pertain to a "serious crime," they fall within the category of slander per se and the Court presumes injury. See id.

However, statements Hubbard made to Plaintiff's private investigator nonetheless are not actionable. As the Court previously noted, the Complaint offers virtually no factual context surrounding Hubbard's alleged statements to a private investigator or private investigators. All that Plaintiff asserts is that he hired one or more private investigators and that Hubbard stated "words to the effect that Plaintiff robbed her." (Compl. ¶ 218.)

"Consent is a bar to a recovery for defamation . . . ." Teichner v. Bellan, 7 A.D.2d 247, 251, 181 N.Y.S.2d 842 (4th Dep't 1959). When a plaintiff authorizes "an agent to make an inquiry on his behalf," he is considered to have consented if "he had reason to anticipate that the response might be a defamatory one." Id.; accord Handlin v. Burkhart,

9

220 A.D.2d 559, 559, 632 N.Y.S.2d 608 (2d Dep't 1995). Thus, when Plaintiff's private investigator(s) appeared at Hubbard's house to inquire about what was likely a somewhat traumatic event, knowing that Hubbard had at least previously suspected or implicated Plaintiff in the armed robbery, Plaintiff certainly could have anticipated that Hubbard would reiterate her statements that Plaintiff was the robber. See Handlin, 220 A.D.2d at 559 (due to prior statements made during a meeting, plaintiff could anticipate that defendants would make same statements in report). Indeed, the very purpose of the private investigator(s) was to inquire about the robbery. See Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., No. 91-CV-4544, 1998 WL 259942, at *5 (S.D.N.Y. May 21, 1998) ("When a plaintiff engages an agent whose mission is to induce defamatory statements, the plaintiff consents to any such resulting defamation."); Dickson v. Slezak, 73 A.D.3d 1249, 1251, 902 N.Y.S.2d 206 (3d Dep't 2010) ("[B]ecause plaintiff hired Hills to garner what he had every reason to anticipate would be defamatory comments from defendants, he implicitly consented to the publication of such comments.").

Moreover, although Plaintiff has not requested leave to amend, the Court notes that any such amendment would be futile. See Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001) (leave to amend should be granted unless there is

10

evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility). Here, Plaintiff's opposition brief proffers the added factual background that Hubbard essentially blurted out that Plaintiff was the robber before the private investigator could even ask a question. (Pl.'s Opp. Br. at 10.) However, Plaintiff's recitation of the facts notes that the private investigator and his friend arrived at Hubbard's house, identified themselves, and stated that they "were retained by the individual that she had picked out initially." (Pl.'s Opp. Br. at 6-7.) In response, Hubbard stated "the man who robbed me." (Pl.'s Opp. Br. at 7.) The parties dispute whether "the man who robbed me" was a statement or merely a question. In any event, even if a statement, Hubbard's comment was not unprovoked. Two men came to her door, asking about the robbery. Thus, when the private investigator acknowledged the subject matter of his investigation, Plaintiff should have anticipated that Hubbard would make such a statement. Accordingly, Plaintiff's claim against Hubbard for alleged slanderous statements made to the private investigator is DISMISSED WITH PREJUDICE.

Finally, the Court turns to Hubbard's statements made to the 9-1-1 operator. Once again, the Complaint is minimal, but asserts that Hubbard called 9-1-1 "and informed them that the person who robbed her had sent two gentleman [sic] over to

11

her house." (Compl. ¶ 219.) Defamatory statements made to a 9-1-1 operator are actionable. See Dobies v. Brefka, 273 A.D.2d 776, 777, 710 N.Y.S.2d 438 (3d Dep't 2000) ("We further concur with [the] Supreme Court that the first three causes of action for defamation arising from the statements made during the 911 emergency call . . . remain viable against defendant since it is undisputed that she communicated certain information.").

Hubbard's only argument for dismissal of this particular claim is that "the statement to the 911 operator is devoid of any reference to 'Peter Spagnuolo.'" (Pl.'s Reply Br., Docket Entry 43, at 4.) Failure to identify Plaintiff by name, however, "is not necessarily fatal to his claim." Gilman v. Spitzer, 902 F. Supp. 2d 389, 395 (S.D.N.Y. 2012). At this stage, Plaintiff must allege that the slanderous statement is "of and concerning the plaintiff." Thai v. Cayre Grp., Ltd., 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010) (internal quotation marks and citation omitted). The Complaint, minimal though it may be, sufficiently pleads "a reasonable connection" between Plaintiff and the alleged slanderous statement. Cardone v. Empire Blue Cross & Blue Shield, 884 F. Supp. 838, 847 (S.D.N.Y. 1995). The Court cautions, however, that Plaintiff bears the burden of proof on this issue. See Thai, 726 F. Supp. 2d at 329-30. Although Plaintiff does not necessarily need to plead the exact words in this case, see Gen. Sec., Inc. v. APX Alarm

12

Sec. Solutions, Inc., 647 F. Supp. 2d 207, 216-18 (N.D.N.Y. 2009), the particular words used may ultimately govern whether Plaintiff can establish slander against Hubbard for her statement to the 9-1-1 operator.

III. Section 1983 Claims

Finally, Hubbard moves to dismiss any of Plaintiff's claims against her which are brought pursuant to Section 1983 because she is not a state actor. The Court agrees.

To state a claim under Section 1983, a plaintiff must "allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999); see also Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010). Only in limited circumstances will courts recognize that a private individual may be subject to liability under Section 1983.

Plaintiff here alleges that Hubbard acted under color of state law by conspiring with state actors. (Pl. Opp. Br. at 12.) "To state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 324 (2d Cir. 2002) (internal

13

quotation marks and citation omitted); see also Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999) (stating that a Section 1983 conspiracy requires (1) an agreement between state and private actors; "(2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages"). "A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." Ciambriello, 292 F.3d at 324; see also Spear, 954 F.2d at 68.

To the extent that Plaintiff is asserting that Hubbard conspired with Tully, Murphy, or any of the other Defendants, the Complaint is lacking any allegations that would plausibly suggest a "meeting of the minds." Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003). Rather, Plaintiff makes allegations such as that Tully improperly suggested Plaintiff to Hubbard, and that Hubbard essentially changed her story at times. However, wholly devoid from those assertions is an allegation to "plausibly suggest[] that these acts were done in furtherance of an agreed upon conspiracy." Bermudez v. City of N.Y., No. 11-CV-0750, 2013 WL 593791, at *8 (S.D.N.Y. Feb. 14, 2013). Thus, Hubbard's motion to dismiss Plaintiff's Section 1983 claim against her is GRANTED and such claim is DISMISSED WITH PREJUDICE.

14

CONCLUSION

For the foregoing reasons, Hubbard's motion to dismiss is GRANTED IN PART and DENIED IN PART. It is GRANTED as to Plaintiff's Section 1983 claim against her and Plaintiff's claims for allegedly slanderous statements made to private investigators and during the course of the police investigation and Grand Jury hearing. It is DENIED as to allegedly slanderous claims made to a 9-1-1 operator. Furthermore, Hubbard did not move to dismiss Plaintiff's intentional and negligent infliction of emotional distress claims against her, and accordingly such claims will proceed.

To the extent that Hubbard's counter-claims rest upon any of the claims dismissed herein, her counterclaims are also DISMISSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:   July   24  , 2013
         Central Islip, NY

15