```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
PETER V. SPAGNUOLO,

                    Plaintiff,              MEMORANDUM & ORDER
                                             12-CV-4327(JS)(AKT)
        -against-

SUFFOLK COUNTY, SUFFOLK COUNTY
POLICE DEPARTMENT, RICHARD DORMER, former
police commissioner  DETECTIVE MARLENE
TULLY, DETECTIVE DENNIS MURPHY, JAMES
RHOADS, commanding officer, JOHN DOE'S
NUMBERS 1-5, those Officers being
Officers who assisted in the arrest,
investigation and/or prosecution
of plaintiff, SUFFOLK COUNTY
SHERIFF'S DEPARTMENT, and SHARON
HUBBARD,

                    Defendants.
----------------------------------------X
APPEARANCES
For Plaintiff:       Peter V. Spagnuolo, pro se
                     120 E. Main Street
                     Mount Kisco, NY 10549

For Defendant:       Joseph DeDonato, Esq.
Hubbard              Morgan Melhuish Arvidson Abrutyn & Lisowski
                     39 Broadway, 35th Floor
                     New York, NY 10006

                     Kyle O. Wood, Esq.
                     H. Lee Dennison Building
                     100 Veterans Memorial Highway
                     P.O. Box 6100
                     Hauppauge, NY 11788


For Defendants:      Kyle O. Wood, Esq.
Suffolk County,      Susan A. Flynn, Esq.[1]
Dormer, Tully,       Office of the County Attorney
Murphy, Rhoads       H. Lee Dennison Building
```

---

[1] The docket lists Ms. Flynn's appearance for Suffolk County only.

1

100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, NY 11788

SEYBERT, District Judge:

This case arises out of a stolen diamond ring. Pro se plaintiff Peter Spagnuolo ("Plaintiff" or "Spagnuolo"), an interested buyer, had contacted Sharon Hubbard ("Hubbard"), the seller, through Craigslist. Hubbard was robbed, and Plaintiff was misidentified as the perpetrator and then arrested. Pertinently, Plaintiff filed this lawsuit against Hubbard and the County Defendants, which is a group composed of Suffolk County, the Suffolk County Police Department, the Suffolk County Sheriff's Department, former police commissioner Richard Dormer, commanding officer James Rhoads, Detective Marlene Tully, Detective Dennis Murphy, and five John Does.

Three motions are pending. First, the County Defendants move for summary judgment. (Docket Entry 111.) The remaining motions concern Sharon Hubbard, who passed away after this lawsuit was filed. Plaintiff seeks to substitute the Public Administrator of Suffolk County, as the temporary administrator for the Estate of Sharon Hubbard, in place of the deceased. (Docket Entries 104, 107.) For the following reasons, the Court grants all three motions.

BACKGROUND

The Court begins with a general overview, adding greater detail in the analysis to come. But first, as an initial matter, the Court notes that Spagnuolo failed to file a Local Rule 56.1 Counterstatement. Nevertheless, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001). Pertinently, a court may review the entire record even if one of the parties fails to file a Local Rule 56.1 Statement. Id. The Court will do so here and cite only the portions of the County Defendants' 56.1 Statement supported by admissible evidence.

In May 2011, Hubbard advertised a diamond ring she wished to sell on Craigslist. (Hubbard's Stmt. Defs.' Ex. C, Docket Entry 111-5.) One month later, a prospective buyer named "Pete" met Hubbard at her home, drew a gun, or what appeared to be a gun, robbed her, and then fled. (Defs.' 56.1 Stmt., Docket Entry 111-2, ¶ 10-11.) Two witnesses, including Corey Bonavia ("Bonavia"), rented studio space from Hubbard and were present during the robbery. (Id. ¶ 9.)

For the ensuing analysis, the timeline of events is critical:

- May 9th:[2] Hubbard provided "peterv@aol.com" (Spagnuolo) and "petethompson13@yahoo.com" (an individual later identified as Christopher Wolkoff) with her telephone number via email. (Id. ¶¶ 3, 5; Pl.'s Br., Docket Entry 116, at 2-3 ¶ 6.)

- May 10th: Hubbard received a telephone call from an individual named "Pete." (Defs.' 56.1 Stmt. ¶ 6.)

- May 11th: Hubbard was robbed of her diamond ring. (Id. ¶¶ 8, 11.)

- May 12th: Hubbard selected Spagnuolo as the perpetrator in a photo array. (Id. ¶ 15.)

- May 31st: Spagnuolo was arrested after Hubbard and Bonavia identified him in physical line-ups. (Id. ¶¶ 16-18.)

- June 3rd: A grand jury indicted Spagnuolo for first-degree robbery and third-degree robbery. (Id. ¶ 22.)

- November 17th: Christopher Wolkoff confesses to the crimes. (Id. ¶ 24.)

Following this timeline, the District Attorney's Office moved to dismiss the indictment pending against Spagnuolo. (Id. ¶ 25.)

Plaintiff filed this lawsuit on August 28, 2012. (Docket Entry 1.) The County Defendants moved for summary judgment on the federal-law false arrest, imprisonment, and prosecution claims as well as the state-law battery claim. (Docket Entry 111.) Plaintiff seeks to substitute the Public Administrator of Suffolk County, as the temporary administrator for the Estate of Sharon Hubbard, in her place. (Docket Entries 104, 107.)

---

[2] Unless otherwise stated, all dates occurred in the year 2011.

4

DISCUSSION

I. The County Defendants' Summary Judgment Motion

As an initial matter, the Clerk of the Court is directed to terminate the Suffolk County Police Department and the Suffolk County Sheriff's Department. These departments are non-suable entities because it is an "administrative arm," which does "not have a legal identity separate and apart from the municipality." Rose v. Cty. of Nassau, 904 F. Supp. 2d 244, 247 (E.D.N.Y. 2012).

A. Legal Standard

Summary judgment is proper only if the records reveals no genuine issues of material fact. Rodriguez v. Vill. Green Realty, Inc., 788 F.3d 31, 39 (2d Cir. 2015) (citing FED. R. CIV. P. 56(a)). "Material facts are those which 'might affect the outcome of the suit under the governing law,' and a dispute is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Coppola v. Bear Stearns & Co., 499 F.3d 144, 148 (2d Cir. 2007) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)). If the moving party has satisfied this initial burden, the opposing party "'must come forward with specific facts showing that there is a genuine issue for trial.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (emphasis in original) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87, 106 S. Ct. 1348, 1356, 89 L.Ed. 2d

5

538 (1986)). "Mere conclusory allegations or denials will not suffice." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986).

Pro se submissions generally require flexible construction, "particularly when they allege civil rights violations." McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004). Yet Spagnuolo, despite his pro se status, is an "experienced attorney," so the Court need not read his papers liberally. See Chira v. Columbia Univ., 289 F. Supp. 2d 477, 482 (S.D.N.Y. 2003).

B. Qualified Immunity

Spagnuolo raises federal false arrest, false imprisonment, and malicious prosecution claims. (Compl. ¶¶ 154-75.) The County Defendants have invoked qualified immunity as an affirmative defense on behalf of the individual defendants. (Defs.' Br., Docket Entry 111-19, at 14-15.) "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, 566 U.S. 658, 664, 132 S. Ct. 2088, 2093, 182 L. Ed. 2d 985 (2012). As the Supreme Court made clear, "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" Walczyk v. Rio, 496 F.3d 139, 154 (2d Cir. 2007) (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986)).

6

False arrest and imprisonment claims require, among other things, evidence "that 'the defendant intentionally confined the plaintiff without his consent and without justification.'" Jean v. Montina, 412 F. App'x 352, 353 (2d Cir. 2011) (quoting Amore v. Novarro, 624 F.3d 522, 532 n.13 (2d Cir. 2010)). Pertinently, a malicious prosecution claim requires proof that "'the defendant initiated a prosecution against the plaintiff,'" "'lacked probable cause to believe the proceeding could succeed,'" and "'acted with malice.'" Id. (quoting Rohman v. N.Y. City Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000)). Probable cause is a complete defense for false arrest and imprisonment claims, and continuing probable cause is a complete defense for malicious prosecution claims. Betts v. Shearman, 751 F.3d 78, 83 (2d Cir. 2014); see also Johnson v. Constantellis, 221 F. App'x 48, 50 (2d Cir. 2007) ("If probable cause existed at the time of arrest, it continues to exist at the time of prosecution unless undermined 'by the discovery of some intervening fact.'" (quoting Kinzer v. Jackson, 316 F.3d 139, 144 (2d Cir. 2003))).

But even if the officers lacked probable cause or continuing probable cause, they are entitled to qualified immunity. As the Second Circuit explained, the qualified-immunity analysis "turn[s] on whether the defendant officers' probable cause determination was objectively reasonable--that is, whether there was 'arguable' probable cause to arrest." Betts, 751 F.3d

7

at 83 quoting Jenkins v. City of N.Y., 478 F.3d 76, 87 (2d Cir. 2007). "A police officer has arguable probable cause 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" McCarthy v. Roosevelt Union Free Sch. Dist., --- F. Supp. 3d ---, 2017 WL 4155334, at *6 (E.D.N.Y. Sept. 19, 2017) (quoting Figueroa v. Mazza, 825 F.3d 89, 100 (2d Cir. 2016)). The inquiry is "whether any reasonable officer, out of the wide range of reasonable people who enforce the laws in this country, could have determined that the challenged action was lawful." Figueroa, 825 F.3d at 100 (emphasis in original); see also Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004) ("[T]he analytically distinct test for qualified immunity is more favorable to the officers than the one for probable cause." (internal quotation marks omitted)).

Here, the officers had arguable probable cause to arrest Spagnuolo and charge him with robbery. A person is guilty of first-degree robbery "when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . [d]isplays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm." N.Y. Penal Law § 160.15(4). A person is guilty of third-degree robbery "when he forcibly steals property." N.Y. Penal Law § 160.05.

8

Before Spagnuolo was arrested, Hubbard identified him in a photo array as the man that drew a gun, or what appeared to be a gun, robbed her of a diamond ring, and the record contains no evidence that the officers guided Hubbard to select him. (Hubbard EBT Tr., Def.'s Ex. D, Docket Entry 111-6, 51:11-24.) Without that evidence, "[a] positive photo identification by an eyewitness is . . . sufficient to establish probable cause to arrest." Celestin v. City of N.Y., 581 F. Supp. 2d 420, 431 (E.D.N.Y. 2008). Before Spagnuolo was charged, Hubbard and Bonavia separately identified him in a physical line-up. Fabrikant v. French, 691 F.3d 193, 216 (2d Cir. 2012) ("[A] law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity.") (internal quotation marks and citation omitted; alteration in original). Spagnuolo has offered no evidence to show that the officers should have doubted either Hubbard's or Bonavia's veracity. Cf. DiStefano v. Sedita, No. 11-CV-1125, 2014 WL 349251, at *4 (E.D.N.Y. Jan. 31, 2014) ("The most common situation in which such doubts [of veracity] arise is when there exists a prior relationship between the victim and the accused that gives rise to a motive for a false accusation.") (internal quotation marks and citation omitted). In other words, a "reasonable officer, out of the wide range of reasonable people who enforce the laws in this country, could have

9

determined that the challenged action was lawful." See Figueroa, 825 F.3d at 100 (emphasis in original).

None of the cited discrepancies affect this probable-cause analysis, including "the height descriptions, which did not match the plaintiff, and the existence of other suspects." See Greene v. City of N.Y., No. 08-CV-0243, 2017 WL 1030707, at *20 (E.D.N.Y. Mar. 15, 2017), appeal docketed, No. 17-1920 (2d Cir. June 16, 2017); Fogelman v. Donato, 111 F. Supp. 3d 282, 285 (E.D.N.Y. 2015) ("Neither an arrestee's protestations of innocence nor a putative victim's inconsistent statements necessarily vitiate probable cause."). Thus, the Court concludes that it was not "manifestly unreasonable" for the officers to arrest Spagnuolo and charge him. See Jean, 412 F. App'x at 354 (internal quotation marks and citation omitted).

One other point bears mentioning. In the context of the malicious prosecution claim, Spagnuolo contends that the officers ignored evidence and misled the Assistant District Attorney ("ADA"). (Pl.'s Br. at 2 ¶ 6; 7 ¶ 14.) To set the stage, after the real perpetrator confessed, a dismissal proceeding took place in the County Court of Suffolk County. (Pl.'s Br. at 7 ¶ 14.) Unfortunately, the relevant portions of that transcript are redacted, (Pl.'s Br. Ex. J, Dismissal Tr., at 145–52), but they are allegedly cited in Spagnuolo's opposition papers, including Officer Tully's deposition transcript. (Pl.'s Br. at 7 ¶ 14; Pl.'s

Br. Ex. F, Tully Dep. Tr., at 38-121, at 197:23-199:19.)[3] During that proceeding, the ADA apparently stated:

> The Suffolk County Police Department conducted a deficient investigation.
>
> ***
>
> Moreover, the Suffolk County Police Department failed to thoroughly investigate all the evidence available to them or provided to this office.
>
> ***
>
> Had the Suffolk County Police Department conducted a complete investigation from the outset, or provided this office with materials that they had access to prior to the arrest and indictment of Peter Spagnuolo, this unfortunate situation would have been avoided.

(Tully Dep. Tr. at 198:14–16, 198:25–199:4, 199:9–15.)

To begin, Spagnuolo was indicted by a grand jury on June 3, 2011. (Def.'s 56.1 Stmt. ¶ 22; see also Indictment, Def.'s Ex. L, Docket Entry 111-14.) In New York, an "'indictment by a grand jury creates a presumption of probable cause.'" Creighton v. City of N.Y., No. 12-CV-7454, 2017 WL 636415, at *35 (S.D.N.Y. Feb. 14, 2017) (quoting Savino v. City of N.Y., 331 F.3d 63, 72 (2d. Cir. 2003)). Pertinently, a plaintiff bears the burden of rebutting that presumption only through evidence "'that the police witnesses have not made a complete and full statement of facts .

---

[3] The relevant deposition excerpts are available on pages 88 and 89 of Spagnuolo's opposition papers.

11

. . to the . . . District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith.'" Id. (quoting Colon v. City of N.Y., 60 N.Y.2d 78, 82-83, 455 N.E.2d 1248, 1250-51, 468 N.Y.S.2d 453 (1983)). But this bad-faith analysis "cannot be satisfied by a showing of mere negligence." Minott v. Duffy, No. 11-CV-1217, 2014 WL 1386583, at *19 (S.D.N.Y. Apr. 8, 2014); cf. Manganiello v. City of N.Y., 612 F.3d 149, 165 (2d Cir. 2010) (rejecting a qualified-immunity defense "given the ample evidentiary support" that the officer "misrepresented the evidence to the prosecutors, or failed to pass on material information, or made statements that were false, and engaged in such misconduct knowingly") (emphasis added).

Despite the ADA's statements, Spagnuolo has failed to present evidence that the "petethompson13@yahoo.com" email address was "intentionally withheld." Savino, 331 F.3d at 74. "In the absence of sufficient evidence that defendants--or any other officers--acted in bad faith, no reasonable juror could find that [Spagnuolo] has overcome the presumption of probable cause that arises from his indictment." See id. at 75.

For all these reasons, the false arrest, false imprisonment, and malicious prosecution claims against the individual defendants do not withstand summary judgment. Likewise, the Court dismisses Plaintiff's state law false arrest

12

and false imprisonment claims on the same grounds.  See Kass v. City of N.Y., 864 F.3d 200, 213-14 (2d Cir. 2017).

   C.   Municipal Liability

"Qualified immunity applies only to individuals" and thus does not insulate Suffolk County from liability.  Pluma v. City of N.Y., 686 F. App'x 66, 67 (2d Cir. 2017).  "However, municipalities may be held liable under § 1983 only if the plaintiff plausibly alleges that a city custom or policy caused his injury."  Id.  Spagnuolo has offered no evidence that Suffolk County engaged in a systematic effort through a custom or policy to violate his civil rights.  Thus, the Court GRANTS summary judgment on any federal-law claims against Suffolk County.

   D.   Remaining State-Law Claims

As for the state-law battery claim and any excessive-force claims under Section 1983, Spagnuolo contends that the officers used excessive force when they handcuffed him.  (Compl. ¶¶ 176-86, 204-08.)  In evaluating the totality of the circumstances, the Court must consider whether: "(1) the handcuffs were unreasonably tight; (2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and (3) the degree of injury to the wrists."  Esmont v. City of N.Y., 371 F. Supp. 2d 202, 215 (E.D.N.Y. 2005) (citations omitted); see also Tompkins v. City of N.Y., 50 F. Supp. 3d 426, 440 (S.D.N.Y. 2014) ("New York courts analyze assault and battery claims against police officers

13

using the same standard applicable to excessive force claims under Section 1983."). Spagnuolo concedes that he neither asked the officers to loosen the handcuffs nor sought medical treatment. (Pl.'s Dep. Tr., Defs.' Ex. B, Docket Entry 111-4, 70:7-10, 143:16-18.) There are few, if any, "cases permitting a plaintiff to establish an excessive force claim based on tight handcuffing in the absence of a request to loosen them." Esmont, 371 F. Supp. 2d at 215 (collecting cases). At any rate, "[u]nsubstantiated claims of nerve damage, in the absence of corroborating medical evidence, are insufficient to support a claim of excessive force from handcuffing." Id. Thus, the Court GRANTS summary judgment on the battery claim.

As for the County Defendants, four state-law claims remain against Officers Tully and Murphy: (1) intentional infliction of emotional distress, (2) negligent infliction of emotional distress, (3) slander, and (4) negligence and reckless indifference. Whether to exercise supplemental jurisdiction is a discretionary decision for the Court. Henning v. City of N.Y., No. 09-CV-3998, 2012 WL 2700505, at *5 (E.D.N.Y. July 5, 2012). Generally, if "all federal claims have been dismissed before trial, pendent state law claims should be dismissed without prejudice and left for resolution by the state courts." Id. Although the case is nearing trial, the Court agrees with the County Defendants that Spagnuolo has abandoned his state-law claims by failing to respond

to the County Defendants' argument. (Defs.' Reply Br., Docket Entry 115, at 10.) Thus, the Court DISMISSES these state-law claims as abandoned. See Elmessaoudi v. Mark 2 Restaurant LLC, No. 14-CV-4560, 2016 WL 4992582, at *15 (S.D.N.Y. Sept. 15, 2016) ("Federal courts have the discretion to deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.") (internal quotation marks and citation omitted).

II. Plaintiff's Motion to Substitute

While this action was pending, Sharon Hubbard died, and the Suffolk County Surrogate's Court then appointed the Public Administrator of Suffolk County as a temporary administrator of her estate. (See Pl.'s Mot., Docket Entry 104, at 3.) Plaintiff seeks to substitute the Public Administrator in place of the deceased. As discussed below, the Court grants Plaintiff's request.

Under the Federal Rules of Civil Procedure, a deceased party's successor or representative may file a motion to substitute when the party dies and the claims are not extinguished. FED. R. CIV. P. 25(a)(1). In considering these motions, "the Court must decide whether: (1) the motion was timely; (2) the claims survive the decedent's death; and (3) the party sought to be substituted for the decedent is a proper party." Badalamenti v. Country Imported Car Corp., No. 10-CV-4993, 2012 WL 6061639, at *9

(E.D.N.Y. Dec. 5, 2012) (internal quotation marks and citation omitted).

First, the motion is timely. Generally, substitution motions provide a ninety-day window, which begins after a notice of death is served. FED. R. CIV. P. 25(a)(1). The statement of death was put on the record on December 18, 2015. (See Minute Entry, Docket Entry 87.) While it is true, as Hubbard's lawyer argues, that Plaintiff missed this deadline, he received five extensions of time. (See docket entries between Dec. 28, 2015 and Dec. 18, 2016.) "The Court is authorized to extend the time in which to file a motion for substitution before or after the expiration of the ninety-day period pursuant to Fed. R. Civ. P. 6(b)." Kernisant v. City of N.Y., 225 F.R.D. 422, 427 (E.D.N.Y. 2005). Thus, the Court exercises its discretion and deems Plaintiff's motion to be timely.

Second, the subject claims survives Hubbard's death. The Complaint asserts claims under Section 1983 and under New York law for battery, slander, negligence, false arrest, false imprisonment, malicious prosecution, negligence and reckless indifference, and intentional and negligent infliction of emotional distress. (Compl. ¶¶ 154–224.) Thus, they "set[ ] forth claims of injury to person or property." Regalado v. Kohl's Dep't Stores, Inc., No. 13-CV-5624, 2015 WL 8481881, at *1 (E.D.N.Y.

16

Dec. 8, 2015) (internal quotation marks omitted) (collecting sources).

Third, the Public Administrator of Suffolk County is a property party because the Suffolk County Surrogate's Court appointed it to be the temporary administrator of Sharon Hubbard's estate. Roe v. City of N.Y._, No. 00-CV-9062, 2003 WL 22715832, at *2 (S.D.N.Y. Nov. 19, 2003) (explaining that proper parties include the deceased party's representative who is "lawfully designated by state authority to represent the deceased's estate" (internal quotation marks and citations omitted)).

CONCLUSION

The Court GRANTS the County Defendants' motion for summary judgment. (Docket Entry 111.) The Court also GRANTS Plaintiff's motions to substitute. (Docket Entries 104, 107.) The Clerk of the Court is directed to amend the caption by substituting the Public Administrator of Suffolk County for Sharon Hubbard. With the exception of this party, the Clerk of the Court is directed to terminate all other remaining Defendants.

[BOTTOM OF PAGE INTENTIONALLY LEFT BLANK]

The only claims that remain are Plaintiff's claims against the Public Administrator of Suffolk County for (1) intentional infliction of emotional distress, (2) negligent infliction of emotional distress, and (3) slander in connection with a 911 call.

                         SO ORDERED.

                         /s/ JOANNA SEYBERT
                         Joanna Seybert, U.S.D.J.

Dated:    September __28__, 2017
           Central Islip, New York